IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

No. 06-709 T
(Judge Firestone)

**CHARLES J. GOHEEN,**

**Plaintiff**

v.

**THE UNITED STATES,**

**Defendant**

---

**AMENDED COMPLAINT**

---

Plaintiff, Charles J. Goheen, by and through the undersigned counsel, and pursuant to the Court's Order of March 6, 2007, files this Amended Complaint against Defendant, The United States, and alleges as follows:

1. Plaintiff is an individual whose principal place of residence is located at 7905 Bow Ct., Frisco, Texas 75035, and his social security number is ███████.

2. Defendant is The United States and may be served by the Clerk of this Court by delivering five copies of this Amended Complaint to the Honorable Alberto R. Gonzales, Attorney General of the United States, 10th St. and Constitution Ave., N.W., Washington, D.C. 20530.

3. This is a civil action against The United States for the recovery of the trust fund recovery penalty erroneously and illegally assessed against and collected from Plaintiff in the total amount of $4,948.00, or such other amount as in law and in fact is recoverable.

4.      This Court has jurisdiction herein pursuant to 28 U.S.C. §1346.

5.      Defendant claims that Plaintiff is liable for the trust fund recovery penalty pursuant to 26 U.S.C. §6672 for Longhorn Trucking, Inc.

6.      Plaintiff is not a responsible person or willful pursuant to 26 U.S.C. §6672 with respect to taxes withheld from the wages of employees of Longhorn Trucking, Inc., and not paid over to Defendant.

7.      Within two years after the penalty described in paragraph 3 was collected from Plaintiff, Plaintiff timely submitted a claim for refund and request for abatement on or about May 22, 2006, with the Internal Revenue Service Center in Dallas, Texas. Plaintiff's claim for refund and request for abatement is attached hereto as Exhibit "A" and incorporated herein by reference. The claim for refund and request for abatement was disallowed by the Technical Services Group Manager, Small Business/Self-Employed Division, of the Internal Revenue Service in Dallas, Texas, by letter dated September 25, 2006, and two years have not elapsed since the taking of such action. The claim for refund and request for abatement is timely with respect to the amount of $4,948.00.

8.      Defendant has refused and continues to refuse to refund the penalty claimed by Plaintiff; and, for the reasons set out in Plaintiff's claim for refund and request for abatement, Plaintiff is entitled to and hereby demands judgment against Defendant for the full sum of $4,948.00, together with statutory interest.

WHEREFORE, Plaintiff prays for judgment against Defendant in the amount of $4,948.00, or such other amount to which he is entitled in law and in fact, together with interest thereon according to law, for costs, attorneys' fees and such other and further relief as may be just and appropriate in the premises.

          Respectfully submitted,

          **TOWNSEND & JONES, L.L.P.**

Dated: March 19, 2007          s/ Lawrence R. Jones, Jr.
              LAWRENCE R. JONES, JR.

          8100 Lomo Alto, Suite 238
          Dallas, Texas 75225
          (214) 696-2661
          (214) 764-3320 - Fax

          **ATTORNEYS FOR PLAINTIFF**

| Form **843** (Rev. November 2002) Department of the Treasury Internal Revenue Service | Claim for Refund and Request for Abatement ▶ See separate instructions. | OMB No. 1545-0024 |
|---|---|---|

Use Form 843 only if your claim involves (a) one of the taxes shown on line 3a or (b) a refund or abatement of interest, penalties, or additions to tax on line 4a.
Do not use Form 843 if your claim is for—
- An overpayment of income taxes;
- A refund for nontaxable use (or sales) of fuel; or
- An overpayment of excise taxes reported on Form(s) 11-C, 720, 730, or 2290.

| Name of claimant<br>Charles J. Goheen | Your SSN or ITIN<br>316 : 50 : 3070 |
|---|---|
| Address (number, street, and room or suite no.)<br>7905 Bow Ct. | Spouse's SSN or ITIN |
| City or town, state, and ZIP code<br>Frisco, Texas 75035 | Employer identification number (EIN) |
| Name and address shown on return if different from above | Daytime telephone number<br>( ) |

**1** Period. Prepare a separate Form 843 for each tax period
From 4 / 01 / 1998  to  6 / 30 / 1998

**2** Amount to be refunded or abated
$ 7635

**3a** Type of tax, penalty, or addition to tax:
☐ Employment  ☐ Estate  ☐ Gift  ☐ Excise (see instructions)
☑ Penalty—IRC section ▶ **Section 6672**

**b** Type of return filed (see instructions):
☐ 706  ☐ 709  ☐ 940  ☐ 941  ☐ 943  ☐ 945  ☐ 990-PF  ☐ 4720  ☐ Other (specify)

**4a** Request for abatement or refund of:
☐ Interest as a result of IRS errors or delays.
☐ A penalty or addition to tax as a result of erroneous advice from the IRS.

**b** Dates of payment ▶ **See attached record of account.**

**5** Explanation and additional claims. Explain why you believe this claim should be allowed, and show computation of tax refund or abatement of interest, penalty, or addition to tax. If you need more space, attach additional sheets.
**See attached statement.**

Internal Revenue Service
SB/SE-C...
RECEIVED
MAY 2 2 2006
Area 10 Territory 1
Farmers Branch TX 75244

Signature. If you are filing Form 843 to request a refund or abatement relating to a joint return, both you and your spouse must sign the claim. Claims filed by corporations must be signed by a corporate officer authorized to sign, and the signature must be accompanied by the officer's title.
Under penalties of perjury, I declare that I have examined this claim, including accompanying schedules and statements, and, to the best of my knowledge and belief, it is true, correct, and complete.

_[signed]_  05-18-06
Signature (Title, if applicable. Claims by corporations must be signed by an officer.)  Date

.........................................................................
Signature  Date

For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.  Cat. No. 10180R  Form **843** (Rev. 11-2002)

**EXHIBIT A**

# Internal Revenue Service
## DEPARTMENT OF THE TREASURY

— e-services —

This Product Contains Sensitive Taxpayer Data

## Account Transcript

Request Date: 05-10-2006
Response Date: 05-10-2006
Tracking Number: 100006591516

FORM NUMBER: Civil Penalty          TAX PERIOD: Jun. 30, 1998

TAXPAYER IDENTIFICATION NUMBER:          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

CHARLES J GOHEEN

7905 BOW CT

FRISCO, TX 75035-7538-052

<<<<POWER OF ATTORNEY/TAX INFORMATION AUTHORIZATION (POA/TIA) ON FILE>>>>

Any minus sign shown below signifies a credit amount.

ACCOUNT BALANCE:          14,355.77
ACCRUED INTEREST:          3,250.02          AS OF: May 22, 2006

ACCOUNT BALANCE
PLUS ACCRUALS:          17,605.79

### TRANSACTIONS

| CODE | EXPLANATION OF TRANSACTION | CYCLE | DATE | AMOUNT |
|---|---|---|---|---|
| 240 | MISCELLANEOUS PENALTY IRC 6672 TRUST FUND RECOVERY PENALTY<br>49251-114-14701-3 | 20032008 | 04-24-2003 | $21,862.73 |
| 290 | PROMPT ASSESSMENT<br>49251-114-14701-3 | 20032008 | 04-24-2003 | $0.00 |
| 196 | INTEREST ASSESSED | 20032008 | 05-26-2003 | $96.04 |
| 582 | FEDERAL TAX LIEN | | 07-18-2003 | $0.00 |
| 360 | FEES AND COLLECTION COSTS | | 08-11-2003 | $32.00 |
| 971 | INTENT TO LEVY COLLECTION DUE PROCESS NOTICE<br>LEVY NOTICE ISSUED | | 07-14-2003 | $0.00 |
| 960 | RECEIVED POA/TIA | | 08-07-2003 | $0.00 |
| 971 | INTENT TO LEVY COLLECTION DUE PROCESS NOTICE<br>RETURN RECEIPT SIGNED | | 07-17-2003 | $0.00 |
| 971 | COLLECTION DUE PROCESS EQUIVALENT HEARING REQUEST RECEIVED | | 09-30-2003 | $0.00 |
| 971 | COLLECTION DUE PROCESS EQUIVALENT HEARING REQUEST WITHDRAWN BY TAXPAYER BECAUSE RESOLVED WITH COLLECTION | | 12-10-2003 | $0.00 |
| 706 | OVERPAID CREDIT APPLIED<br>1040 200312 | | 04-15-2004 | -$2,687.00 |

| 706 | OVERPAID CREDIT APPLIED<br>1040 200412 | 04-15-2005 | -$2,648.00 |
| 480 | OFFER IN COMPROMISE PENDING | 10-11-2005 | $0.00 |
| 483 | CORRECTION OF OFFER IN COMPROMISE | 12-28-2005 | $0.00 |
| 706 | OVERPAID CREDIT APPLIED<br>1040 200512 | 04-15-2006 | -$2,300.00 |

This Product Contains Sensitive Taxpayer Data

ATTACHMENT TO FORM 843
FOR
CHARLES J. GOHEEN
SSN 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

**A.     Facts**

Around December of 1994 Charles J. Goheen (Joe) went to work for Express One Airlines (Express One), a cargo airline, as manager of ground services. Joe was hired because of his background in dealing with the United States Post Office in the Christmas mail contracts and his experience in the trucking industry. During his employment at Express One, Joe worked for Charles Zubarik (Zubarik) in the cargo division.

In the early part of 1995 Express One decided that it needed a trucking division to haul both the airfreight containers for contracts and aircraft parts for the repair of the aircraft it owned. Longhorn Trucking, Inc. (Longhorn), was created as a partnership between Jim Weikert (Weikert) and Zubarik. Around March of 1997 it was decided to either sell the trucking company or just shut it down. Zubarik asked Joe if they could make a go of the company, and Joe stated that as long as they had Express One as the primary customer, they could.

Joe ran the day-to-day operations under Zubarik's direction and drove trucks. He was not in the office a great deal as the company was always short of drivers. Joe had check writing authority, and did write checks to pay vendors. Zubarik always made it clear that he ran the company and was advised of all money transactions. Zubarik was responsible for making all payroll tax deposits.

Zubarik structured a transaction so that Joe would become a partner and pay Weikert $50,000.00 for his interest in the company. Zubarik had the contract to buy Longhorn drawn up with a $20,000.00 down payment to be made at the time of the transaction. Zubarik wanted the company and Joe did not have the $20,000.00. Therefore, Zubarik wrote Joe a check for $20,000.00, and Joe in turn wrote a check to Weikert for the $20,000.00 down payment. Joe did not own this interest.

The $20,000.00 down payment was to be given back to Zubarik over a period of six months by the proceeds from Longhorn and was paid by Longhorn in company checks.

In early 1999 Joe found out the withholding taxes had not been paid. Joe received a form letter from the IRS in April of 1999 that was sent to the office of Longhorn in McKinney. Joe sent the notice to Zubarik, the major principal and stockholder of Longhorn, for his consideration and direction on how to proceed. Zubarik decided that he would shut the company down, liquidate the equipment of Longhorn and clear all debts that had Zubarik's name on them. After this was done, Zubarik advised they would proceed with bankruptcy for the corporation and use the proceeds to pay off the debt owed to the IRS. The assets were liquidated and any funds received were received by Zubarik.

In August of 1999, Zubarik instructed Joe to close down the corporation and advised that he/Zubarik would oversee the liquidation of the remaining assets. Joe understood that any additional monies received from the liquidation of the remaining assets would be used to pay the taxes owed to the IRS.

Longhorn was closed and all business was ceased in September of 1999 and was placed in bankruptcy.

Sometime in April Joe had a meeting with the IRS. The meeting was with Ms. Karen Wilson. Joe explained what was happening with Longhorn as far as the assets were concerned, and that Zubarik would be getting with the IRS and the debt should be cleared up. At this time Joe provided Ms. Wilson with all the documents that he had concerning Longhorn and all assets and accounts receivable. Ms. Wilson stated that the matter should be cleared up in about two to three weeks and with this information there should be no further problems. Joe had a couple of other meetings with Ms. Wilson and provided other documents that she requested. During these meetings Ms. Wilson again stated that the matter should be cleared up in a matter of weeks.

Sometime during the next 30 to 60 days Joe called Ms. Wilson and was informed she was on leave and getting married, and that he would be contacted when she returned. When Joe finally did get in contact with her, he was informed that her name was now Ms. Wilson-Gardner and that he was not to contact her as she would contact him. When Joe tried to contact her again, he was informed she was again on some type of leave and was not reachable.

Joe subsequently called the IRS several times about the debt and was informed that the case was "in limbo" and that no person was assigned to it at this time. On or about November 22, 1999, Joe received a letter from W. Roberts at the IRS. Joe called for a W. Roberts and was informed that W. Roberts was not handling the case, but that a C. Wolf was. Joe called for a meeting with C. Wolf and was informed that Willie Travis was handling the case.

In January of 2000 Joe did finally get in contact with Ms. Willie Travis, and was informed that he needed to write a letter to her requesting a meeting and protesting the manner in which the IRS was handling the situation and the debt itself as it should have been paid by this time by the assets from the company. Joe wrote this letter on January 12, 2000.

For the next year or so Joe heard nothing nor could he get any person in the IRS to discuss the matter with him. Then Joe had a meeting with Mr. Tony Seidel, and at that meeting Mr. Seidel stated that both Zubarik and Joe would be held liable for the debt. Mr. Seidel suggested that Joe submit an offer and compromise. At this time Joe contacted Patti Logan with The Tax Group and turned his matter over to her for her help.

Joe was the secretary of the corporation as indicated on the president's Form 433-B, Collection Information Statement, the 4180 interview, and the bank signature card that is legible. Revenue Officer Karen Gardner added to Form 4180 in her handwriting that Joe was a Second Vice President of Operations. There is an old printout from 1992 from the Secretary of the State of Texas showing Joe to be the Second Vice President. However, it cannot be verified that Joe was Second Vice President at the time the taxes were accrued. There was a change in the makeup of the company when Weikert sold his 50% of the business to the existing owners. The Form 1120S reviewed on April 8, 1999, in the revenue officer history indicates that Joe was a 20% owner.

Also, the narrative dated October 23, 2001, written by Mary Darden indicates that Joe purchased 50% of the ownership interest in Longhorn. A review of the document indicates that Weikert sold his 50% interest to "the new owners." The document is signed by Joe, but in the capacity as an agent. It does not indicate that Joe personally purchased the 50% interest.

The IRS is stating that Joe "clearly ought to have known that there was a grave risk that the taxes were not being paid and could have found out for certain easily." There is nothing to indicate that Joe had any knowledge that taxes were not being paid.

According to the Internal Revenue Manual (IRM), willfulness begins "after being notified that withholding taxes have not been paid."

According to the Trust Fund Recovery File:

1) Mr. Charles Goheen did not sign or prepare tax returns.

2) A PO Box was used by the company for mail so that Mr. Goheen would have had the to have the duty to go to the post office in order to have seen incoming notices. The ICS history of 4/24/98 indicates that the post office box used on the returns was not in the name of the company. We believe it was in Mr. Zuverick's name but know that it was not in Mr. Charles Goheen's name.

3) Tax returns were not filed on time. Mr Charles Goheen did not have the responsibility for preparing or reviewing 941s so that he wouldn't have known that taxes were not paid.

4) At the revenue officer's first contact, Mr. Charles Goheen was the person who responded. The history indicates at that time that he did not know about the tax liability.

5) Form 4180 interview indicates that Mr. Goheen did not know about the tax liability until 1/3/99. After that time, some payroll deposits were made.

3

6) The Company was closed when it became clear that the payroll could not be made.

7) Charles Goheen and his son both tried to assure that the taxes were paid by notifying the revenue officer that the president Zubarik was liquidating assets rather than paying the taxes. Zubarik was selling off trucks and not paying IRS. Goheen had no ability to stop this as he had no control. This alone shows that he was not willful in trying not to pay taxes.

During the period between when the taxes were accrued and later, the return filed and the time that the tax was assessed, the IRS changed the method of computation of the trust fund recovery penalty. To make it simpler, the IRS determined that payments should first be applied to the employer's portion, and then to the employee's portion of the trust fund taxes. Prior to that time, the payments were applied first to the employer's portion, and then to any statutory additions.

According to the IRM, the change was made service-wide effective 6/19/00 (reference IRM 5.7.4.3). The IRM has determined that the new application method will be used for all trust fund penalties *calculated* prior to that date. It goes on to instruct to modify any calculations if payments were made after the calculations.

It is an unequal application of the law to have penalties assessed on two different corporations but for the same quarters calculated using two different application methods. Had the calculations for Longhorn been made later, a payment of $9,572.59 would have been applied to the trust fund taxes for the second quarter of 1998.

Should the IRS find that Joe is willful and responsible, the $9,572.59 should be deducted from the second quarter amount due.

Internal Revenue Code Section 6751(a) states that, "[t]he Secretary shall include with each notice of penalty under this title information with respect to the name of the penalty, the section of this title under which the penalty is imposed, and a computation of the penalty." It goes on to describe penalties to include "any addition to tax or any additional amount." Section 6751 is effective for all penalties assessed after June 30, 2001. The trust fund penalty in question was assessed in 2003 and is therefore applicable. Penalties under Section 6672 are not exempt by law.

The assessment in Joe's case was a prompt assessment made to protect the statute. However, in prompt assessments, the taxpayer is provided a Form 3552 which fails to meet the requirements of Section 6751(a). Form 3552 states in part as follows:

> This is a notice of tax due on your tax return identified above. Please pay the amount shown as Balance Due when you receive this notice. Make your check or money order payable to the United States Treasury and send it with this notice to the address shown above.

4

If the balance due as shown below is incorrect because you made a recent payment, please send us the amount you believe you owe and an explanation of the difference.

The form goes on to reference an additional tax of $0.00 and "618" of $21,862.73. Although it is not defined on the notice, Exhibit 5.2.4-2 states: "100% Penalty (also known as (a.k.a.) the Trust Fund Recovery Penalty)–The number of TADS with civil penalties assessed under MFT 55 with reference code 618."

## B.     The Law

Liability under Section 6672 of the Internal Revenue Code is a question of fact, requiring two factual showings: first, the party assessed must be a party required to collect, account for, or pay over the withheld taxes (referred to as a "responsible person"); and second, the failure to pay must be "willful." Hartman v. United States, 538 F.2d 1336, 1340 (8th Cir. 1976).

Joe is not a "responsible person" within the meaning of Section 6672, and he did not "willfully" fail to collect and pay over the alleged trust fund taxes which are the subject of the proposed trust fund recovery penalty.

The Internal Revenue Code (hereinafter "the Code") requires employers to withhold from employees' wages federal income taxes and social security contributions. Sections 3102 and 3402 of the Code. The employer holds these funds "in trust" for the United States. Section 7501(a) of the Code. When a corporate employer fails to pay over the trust funds, Section 6672(a) of the Code imposes a penalty equal to the entire amount of the unpaid taxes on "any person" required to collect, account for, or pay over the withheld taxes, who "willfully" fails to do so. Liability for the penalty is established if a person is a "responsible person" who "willfully" failed to pay over the withheld taxes. Turnbull v. United States, 91-1 USTC ¶50,196, 929 F.2d 173, 178 (5th Cir. 1991); Raba v. United States, 93-1 USTC ¶50,039, 977 F.2d 941, 943 (5th Cir. 1992); Gustin v. United States, 89-2 USTC ¶9423, 876 F.2d 485, 491 (5th Cir. 1989); Wood v. United States, 87-1 USTC ¶9165, 808 F.2d 411, 414 (5th Cir. 1987); Howard v. United States, 83-2 USTC ¶9528, 711 F.2d 729, 733 (5th Cir. 1983).

Section 6672(a) of the Internal Revenue Code of 1986 provides in pertinent part as follows:

> General Rule -- Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

5

The elements of the trust fund portion of payroll taxes are set forth as follows:

| The Trust Fund Portion | Not Part of The Trust Fund Portion |
|---|---|
| Employee's Federal Income Taxes Withheld From Paycheck | Employer's Matching Social Security Taxes |
| Employee's Portion of Social Security Benefits Withheld | Delinquency Penalties |
| | Accrued Interest For Non-Payment Federal Unemployment Taxes (Form 940) |

Section 6672(a) is a collection device designed to insure payment of federal withholding taxes. The statute accomplishes its goal by piercing the corporate shell and shifting liability to those individuals actually responsible for collecting and paying payroll taxes. In keeping with its purpose, the penalty is normally assessed against a number of persons simultaneously. See, e.g., Brown v. United States, 511 F.2d 1136 (5th Cir. 1979).

Liability under Section 6672(a) is predicated on the following two elements:

(1) The failure must be attributable to a responsible person; and

(2) there must be a willful failure with regard to the collection or payment of federal payroll taxes.

Thus, the two relevant terms under the statute are "responsible person" and "willful."

Joe was not a "responsible person" within the meaning of Section 6672, and he did not "willfully" fail to collect and pay over the alleged trust fund taxes which are the subject of the proposed penalty. Persons within the scope of Section 6672 include those who exercise control over payment of business funds. Genins v. United States, 489 F.2d 95, 96 (5th Cir. 1974). It is the authority to control the disposition of funds which determines the responsibility for withholding and paying taxes. Fort v. United States, 48 AFTR 2d 81-5744 (ND Ill. 1981); Morley v. United States, 42 AFTR 2d 78-5691 (SD Tex. 1977). Joe did not exercise any such control or any responsibility over the payment of creditors of Longhorn.

The second element in determining whether a person is liable for the penalty is willfulness. A person cannot be responsible if he is not willful. In order to be willful, a person has to pay other creditors with knowledge that the taxes have not been paid. Chappell v. United States, 35 AFTR 2d 75-931 (SD Ill. 1975); Godfrey v. United States, 84-2 USTC ¶9974 (Fed. Cir. 1984); and Kalb v. United States, 35 AFTR 2d 74-5327 (2nd Cir. 1974).

In defining the term "willful" within the meaning of Section 6672(a), the Fifth Circuit Court of Appeals, which governs cases in Texas, has held that "reasonable cause" is part

of the test for determining whether the failure to collect, account for, and pay over payroll taxes was willful. Newsome v. United States, 421 F.2d 215, 26 AFTR 2d 70-5078 (5th Cir. 1970). See also the Fifth Circuit case, verifying that "reasonable cause" is still a possible defense, of Bowen v. United States, 88-1 USTC ¶9164 (5th Cir. 1988). The Court of Claims also has approved a reasonable cause defense in L.C. McCarty v. United States, 71-1 USTC ¶9232 (Ct.Cl. 1971).

It is evident that the person who is responsible for the payment of these taxes is someone other than Joe. Joe did not knowingly or intentionally act to pay other creditors in preference to the IRS. Since Joe did not knowingly prefer other creditors to payment of IRS tax deposits under the legal definition of "willful" because of his "reasonable cause," Joe should not be liable for the penalty.

Joe should not be liable in any manner for the trust fund recovery penalty. He was not in a position to be responsible for the collection or payment of funds to any creditor, including the IRS.

Responsibility is a matter of status, duty, and authority. Those performing ministerial acts without exercising independent judgment will not be deemed responsible. In general, persons who act solely under the dominion and control of others, and who are not in a position to make independent decisions on behalf of the business entity, will not be assessed the trust fund recovery penalty. This is Joe's situation.

Responsibility is simply a threshold question under Section 6672: it is determined by looking to one's status within a corporation--that is, one's duty and authority to withhold and pay taxes. Unlike the willfulness element of the statute, responsibility does not require knowledge that one has that duty and authority. See Mazo v. United States, 79-1 USTC ¶9284, 591 F.2d 1151 (5th Cir. 1979); see also Howard v. United States, supra, at 734. The crucial inquiry is whether the person had the "effective power" to pay the taxes--that is, whether he had the actual authority or ability, in view of his status within the corporation, to pay the taxes owed. Raba v. United States, supra, at 943; Gustin v. United States, supra, at 491-492; Howard v. United States, supra, at 734. Zubarik met these requirements, since he controlled Longhorn.

Control is a key factor in determining whether someone is responsible. In order to have control of Longhorn, one must be able to control the finances. Joe was unable to control the finances since he acted at the direction of Zubarik, and Zubarik made all financial decisions.

One of the many factors which is considered in determining liability is the authority to sign checks and the actual signing of checks. The fact that someone signed checks, however, does not in and of itself establish that someone is responsible. While Joe could sign checks for Longhorn, he was not in control of Longhorn, and could not write checks or make a decision to write checks without the approval of someone else.

The sweeping net of Section 6672 responsibility is not intended to unfairly impose actual liability on a person who, in failing to withhold and pay over employees' taxes to the IRS, did not exercise any actual knowing responsibility. As noted, supra, Section 6672(a) will impose liability on a responsible person only if that person "willfully" failed to collect, account for, or pay over withheld taxes. Therefore, the willfulness inquiry is the sifter in most Section 6672 cases.

Willfulness under Section 6672 of the Code requires only a voluntary, conscious, and intentional act--not a bad motive or evil intent. Mazo v. United States, supra, at 1154; Gustin v. United States, supra, at 492. Willfulness is normally proved by evidence that the responsible person paid other creditors with knowledge that withholding taxes were due at the time to the United States. Gustin v. United States, supra, at 492. "A considered decision not to fulfill one's obligation to pay the taxes owed, evidenced by payments made to other creditors in the knowledge that the taxes are due, is all that is required to establish willfulness." Howard v. United States, supra, at 736. Willfulness is normally proved by evidence that the responsible person paid other creditors with knowledge that withholding taxes were due at the time to the government. Morgan v. United States, 91-2 USTC ¶50,387, 937 F.2d 281, 285 (5th Cir. 1991). Joe had no control over paying the taxes, since all financial decisions were under the control of Zubarik.

The control maintained by Zubarik over the financial operations of Longhorn prohibited Joe from paying the tax obligations. Joe did not have the ability to write a check without the approval of Zubarik.

Although Joe was a shareholder of Longhorn, he cannot be held liable for the taxes unless it can be shown that he was both responsible and willful. Being a minority owner of a company and being unable to control its receipts prohibits a person from being liable for taxes which are not paid.

Joe should not be liable in any manner for the proposed trust fund recovery penalty. He was not in a position to be responsible for the collection or payment of funds to any creditor, including the IRS.

Joe did not willfully pay other creditors in lieu of the IRS as he had no control over the disbursement of any company funds, and only signed checks when he was directed to do so by Zubarik. The payment of taxes was the sole responsibility of Zubarik, who controlled every aspect of Longhorn's business and operation.

Joe's position is supported by IRS Policy Statement P-5-60, which deals with the trust fund recovery penalty and revises the old policy statement. The trust fund recovery penalty, applicable to withheld income and employment (social security and railroad retirement) taxes or collected excise taxes, is used to facilitate the collection of tax and enhance voluntary compliance. If a business has failed to collect or pay over income and employment taxes, or has failed to pay over collected excise taxes, the trust fund recovery penalty may be asserted against those determined to have been responsible and willful in

failing to pay over the tax. Responsibility and willfulness must <u>both</u> be established.

No single factor is dispositive in evaluating whether the individual had significant control; that determination must be made in light of the totality of the circumstances. <u>Fiataruolo v. United States</u>, 8 F.3d 930 (2nd Cir. 1993). The test for determining responsibility under Section 6672 is a matter of focusing upon the degree of influence and control which the person exercised over the financial affairs of the corporation, and specifically, disbursements of funds and the priority of payments to creditors. <u>Gephart v. United States</u>, 818 F.2d 469, 473 (6th Cir. 1987). Generally, such a person is one with ultimate authority over expenditure of funds, since such a person could fairly be said to be responsible for the corporation's failure to pay its taxes or, more explicitly, one who has authority to direct payment of creditors.

Joe had no role in the decision making of the financial end of the business at the time at issue. It was not Joe's responsibility to determine who got paid. He simply could not do that without the approval of Zubarik. This was all controlled by Zubarik. There was only one person that made decisions, and that was Zubarik. Which creditors to be paid, as well as the dates and amounts of the payments, were determined solely by Zubarik. The payment of taxes was solely within Zubarik's responsibility. Zubarik firmly controlled all actions with respect to monetary decisions as they related to Longhorn.

Joe is not a "responsible person" within the meaning of Section 6672, and he did not "willfully" fail to collect and pay over the alleged trust fund taxes which are the subject of the proposed trust fund recovery penalty.